Law Offices of
**MICHAEL W. CARMEL, LTD.**
80 East Columbus Avenue
Phoenix, Arizona 85012-2334
Telephone: (602) 264-4965
Arizona State Bar No. 007356
Facsimile: (602) 277-0144
E-mail: Michael@mcarmellaw.com

Proposed Attorney for Debtors

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PARAMOUNT BUILDING SOLUTIONS, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:17-bk-10867-EPB<br><br>Case No. 2:17-bk-10868 |
| In re:<br><br>CLEANING SOLUTIONS, LLC,<br><br>Debtor. | Case No. 2:17-bk-10869<br>Case No. 2:17-bk-10870<br>(Joint Administration Requested) |
| In re:<br><br>JMS BUILDING SOLUTIONS, LLC,<br><br>Debtor. | *EMERGENCY* MOTION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO §§ 363, 364 AND 507(b); (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362; (III) GRANTING RELATED RELIEF; (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND AUTHORIZING USE OF CASH COLLATERAL AND GRANTING OF ADEQUATE PROTECTION |
| In re:<br><br>STARLIGHT BUILDING SOLUTIONS, LLC,<br><br>Debtor. | **Date of Hearing: TBD**<br>**Time of Hearing: TBD** |

Cleaning Solutions, LLC ("**Cleaning**"), Paramount Building Solutions, LLC ("**Paramount**"), Starlight Building Solutions, LLC ("**Starlight**"), JMS Building Solutions, LLC ("**JMS**") (collectively the "**Debtors**"), by and through undersigned counsel, move this Court for entry of an interim and a final order under 11 U.S.C. §§ 105(a), 361, 362, 363, 364, 507(b) and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Debtors to

obtain secured post-petition financing from DW Jade, LLC, as lender (the "**DIP Lender**"), and authorizing the agreed use of cash collateral and grant of adequate protection.

The following information is provided in compliance with Rule 4001(b)(1)(B) Fed. R. Bankr. P., and Rule 4001-4 Local Rules of Bankruptcy Procedure for the District of Arizona:

(1) DIP Lender is the <u>only</u> prepetition secured creditor of the Debtors with a prepetition security interest in assets of the estates. Pursuant to the proposed post-petition financing, the DIP Lender will be granted first priority priming liens and security interests in all of the Debtors Collateral (as defined in the Senior Secured Superpriority Debtor-In-Possession Credit and Security Agreement (the "**DIP Facility Agreement**") attached to this Motion as "Exhibit C") pursuant to Bankruptcy Code § 364(c) and (d) and DIP Lender will be granted super-priority administrative expense status, with respect to the obligations under such post-petition financing, with priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b) and 546(c), except for the carve-outs as further describe in the proposed Interim Order attached as "Exhibit A" ("**Interim Order**") or the Dip Facility Agreement.[1] See conclusions in paragraphs L, M, R, and paragraphs 11 through 14 of the attached proposed Interim Order.

(2) The Interim Order proposes to determine the amount, validity, perfection and scope of security interests affecting the rights of the estate and third-parties. See conclusions in paragraphs H through M, and paragraphs 11 through 14 of the attached proposed Interim Order.

(3) The Interim Order proposes to waive claims related to the DIP Lender. See paragraphs 10, 11, 17 and 24 of the attached proposed Interim Order.

(4) The Debtors do not propose to grant liens or security interests against rights and actions arising under Code §§ 544, 545, 547, 548 or 549.

(5) The Debtors do not propose to use proceeds from the post-petition financing to pay pre-petition secured debt.

(6) The Professional Fee Carve-out is defined in the DIP Facility Agreement and addressed in paragraphs 12 and 15 of the attached proposed Interim Order.

---

[1] To the extent there is an inconsistency between the terms of the Interim Order and the Dip Facility Agreement, the Interim Order should be viewed as the most current iteration and shall control.

(7) The proposed post-petition financing does not address the payment of prepetition wages, salary or other compensation.

(8) Pursuant to the proposed post-petition financing, the DIP Lender will be granted first priority priming liens and security interests in all of the Debtors Collateral (as defined in the DIP Facility Agreement and attached to this Motion as "Exhibit C"). See conclusions in paragraphs M, R, and paragraphs 12 through 14 of the attached proposed Interim Order.

This Motion seeks immediate entry of an interim order granting the Motion and is brought on an emergency basis on expedited notice under Local Bankruptcy Rule 9013-1(h) to avoid immediate and irreparable harm to the Debtors' estates.

> The relief requested in this Motion would authorize the Debtors to obtain secured post-petition, debtor-in-possession financing. The basis for the relief request in this Motion is set forth in Article III, paragraphs 18 through 23 below and such sections of the DIP Facility and Interim Order identified above.

This Motion is supported by the entire record before the Court, the *Declaration of Jeffory Southard in Support of First Day Pleadings*" (the "**Southard Declaration**") filed contemporaneously with this Motion, and by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    BACKGROUND.**

### Jurisdiction and Venue

1. On September 15, 2017, Cleaning filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. On September 15, 2017, Paramount filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

3. On September 15, 2017, Starlight filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

4. On September 15, 2017, JMS filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

5. On September 15, 2017, Debtors filed their Motion for Joint Administration of Pending Bankruptcy Cases (Docket No.3) and the motion is pending.

6. Each of the Debtors is a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 and no trustee has been appointed in these cases.

7. The Post-Petition Financing is intended to provide the Chapter 11 bankruptcy estates (hereafter "**Estates**") with necessary operating funds to operate the Debtors' businesses until the a sale of the Debtors' assets through 11 U.S.C. § 363 of the Bankruptcy Code occurs.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 366.

## Background Facts Concerning the Debtors

9. In support of this Motion, the Debtors incorporate by reference the statements set forth in the Southard Declaration.

## Agreed Use of Cash Collateral

10. The Debtors hereby acknowledge and agree that the DIP Lender has a perfected interest in the Debtors' cash collateral pursuant to the Prepetition Loan Documents to secure the Prepetition obligations. The DIP Lender and the Debtors have agreed on Debtors' use of cash collateral contingent upon the relief requested in the attached Interim Order substantially in the form attached as "Exhibit A", including, without limitation, the Court's grant of replacement liens and the Adequate Protection Superpriority Claim in favor of DIP Lender. The authorization granted to the Debtors to use Cash Collateral under the Interim Order will automatically terminate upon the *earliest* of: (i) Twenty-one (21) days following entry of this Interim Order, unless extended by DIP Lender in its sole discretion; or (ii) the Termination Date.

## Necessity Of DIP Financing

11. The Debtors, headquartered in Phoenix, Arizona, provide janitorial services to grocery supermarkets, airport terminals, and medical facilities. Aside from cash on hand, inventory and furniture, fixtures and equipment, majority of the value in the Debtors' estates is attributable to their customer relationships, profitable service contracts and going concern value. The Debtors have marketed the assets as a going concern for over 17 months, and continue to engage with potential bidders. The Debtors' have issued a press release regarding the bankruptcy and intended sale of the

Case 2:17-bk-10867-EPB    Doc 9    Filed 09/15/17    Entered 09/15/17 15:22:01    Desc
CORE/3504338.0002/134986734.2            Main Document           Page 4 of 11

businesses through 11 U.S.C. § 363 of the Bankruptcy Code. The Debtors and the DIP Lender agree that the Debtors' business must continue to operate until the assets can be sold in order to preserve the going concern value of such assets for the benefit of creditors. The Estates have insufficient operating funds to make all required operating payments. In short, the Estates urgently require the DIP Facility to continue operations in the ordinary course.

## II. **RELIEF REQUESTED.**

12. By this Motion, the Debtors seek entry of an Interim Order substantially in the form attached as "Exhibit A" to this Motion and a final order (the "**Final Order**") under Bankruptcy Code §§ 105, 362, and 364(b):

    a. Authorizing the Debtors to obtain post-petition, debtor-in-possession financing up to an aggregate principal amount of $2,075,000.00[2], (the "**DIP Facility**") in accordance with the Interim Order and the DIP Facility Agreement attached to this Motion, executed among the DIP Lender and the Debtors as borrowers, for such purposes as set forth on the Budget (attached to this Motion as "Exhibit B") and pursuant to any related documents to be drafted and required to be delivered in connection with the DIP Facility Agreement (collectively with the DIP Facility Agreement, the "**DIP Loan Documents**");[3]

    b. Approving the terms and conditions of the DIP Loan Documents and authorizing the Debtors to execute and enter into the DIP Loan Documents;

---

[2] The Budget attached hereto as Exhibit B provides for funding of the following amounts on the following dates.

    09/22/17: $250,000
    09/29/17: $750,000
    10/27/17: $450,000
    11/30/17: $625,000

[3] The Debtors propose that the DIP Facility be granted on an interim basis under the terms of the DIP Facility Agreement and the Interim Order. Prior to a final hearing on this Motion, the Debtors and the DIP Lender will have any other DIP Loan Documents drafted to reflect the agreement set forth in the DIP Facility Agreement.

c. Authorizing the Debtors to execute and deliver, from time to time, all such other documents, instruments, and agreements and to perform all such other acts as may be required in connection with the DIP Loan Documents;

d. Authorizing the Debtors under Bankruptcy Code §§364(b) to obtain debtor-in-possession financing under the DIP Loan Documents (all such financing, loans, extensions of credit, and other indebtedness including related interest and fees are the "**Post-petition Advances**");

e. Modifying the automatic stay under Bankruptcy Code § 362 to the extent reasonably necessary to permit the Debtors and the DIP Lender to implement the terms of the Interim Order and the Final Order;

d. Authorizing the Debtors, after an emergency hearing (the "**Interim Hearing**"), to obtain debtor-in-possession financing from the DIP Lender up to an aggregate principal amount of $2,075,000.00, pending a final hearing on this Motion (the "**Final Hearing**");

e. Scheduling the Final Hearing and establishing notice procedures for the Final Hearing and the proposed Final Order.

### III. BASIS FOR RELIEF.

13. The Debtors have determined that the DIP Facility is necessary to provide the Debtors with necessary operating funds to operate the Debtors' businesses until a purchase of all or a portion of Debtors' assets through a Bankruptcy Code § 363 sale is closed (the "**Transaction**"). In this regard, the Debtors have concluded that obtaining the post-petition financing contemplated by this Motion is necessary and in the best interest of the Debtors and their estates.

**The DIP Facility**

14. The terms and conditions of the proposed DIP Facility are set forth in the DIP Facility Agreement itself, which is attached as Exhibit C to this Motion, and need not be reiterated here. Nonetheless, the Debtors specifically note the following key provisions of the DIP Facility Agreement and the proposed Interim Order:

a. Interest Rate:

Non-default interest rate is an annual rate of LIBOR plus Five Percent (5%) calculated on the basis of a 360-day year and actual days elapsed.

b. <u>Maturity</u>:

The Loan is due and payable on the occurrence of the "**Termination Date**," which would be the earliest to occur of (i) November 30, 2017, (ii) the date Borrowers terminate the DIP Lender's Revolving Commitment to make further advances under the Credit Facility, (iii) the closing of the Transaction, or (iii) the date the DIP Lender terminates the Revolving Commitment to make further advances under the Credit Facility following an event of default as set forth in the DIP Facility Agreement. Events of Default are set forth in Section 9 of the DIP Facility Agreement. Any obligation of DIP Lender to provide advances under the Credit Facility would automatically terminate on the Termination Date. The Obligations under the Credit Faculty and the prepetition Existing Liabilities to Lender are due and payable on the Termination Date.

c. <u>Liens/Priority</u>: The DIP Facility is to be secured by first priority priming security interests in and liens on all of the existing and after-acquired real and personal assets of the Debtors and their Estates, including, without limitation, all accounts, cash, deposit accounts, contract rights, general intangibles, inventory, equipment, and all proceeds therefrom. The Obligations under the DIP Facility (the DIP Superpriority Claim) and the Dip Lender's rights to adequate protection pursuant to its prepetition Existing Credit Agreement (the Adequate Protection Superpriority Claim) each as set forth in the Interim Order are secured by first priority priming security interests in and payable from all sources of collateral, excluding general recoveries under Chapter 5 of the Bankruptcy Code. The DIP Facility is secured by the *Specified Bankruptcy Recoveries*, which are limited to recoveries arising under section 549 of the Bankruptcy Code, and (B) with respect to recoveries arising under all other sections of chapter 5 of the Bankruptcy Code, the amounts necessary to reimburse the DIP Lender for the amount of the Professional Fee Carve Out, if any, used to finance the pursuit of such recovery.

d. <u>Borrowing Limit</u>: An aggregate principal amount of $2,075,000.00.

e. <u>Borrowing Conditions</u>: DIP Lender's obligation to make the initial and subsequent advances under the DIP Facility is conditioned on full and timely satisfaction (in DIP Lender's sole discretion) of certain conditions precedent deemed appropriate by DIP Lender in its sole discretion, as set forth in Section 4 of the DIP Facility Agreement, including but not limited to the following:

- Debtors have executed, and delivered to DIP Lender all Loan Documents required by DIP Lender, in form and substance acceptable to DIP Lender;
- The Budget has been approved by the DIP Lender; and
- The Financing Order has been entered and remains in full force and effect.

f. <u>Repayment:</u> The outstanding principal balance together with all accrued and unpaid interest, fees, and any other charges shall be due in full on the Termination Date.

g. <u>Approval of the Bankruptcy Court</u>: The Financing is conditioned on approval by the Bankruptcy Court pursuant to interim and final orders in form and substance acceptable to DIP Lender in its sole discretion (collectively, the "**Financing Order**"). Among other things, the Financing Order would (i) adjudicate all indebtedness under the DIP Facility to have superpriority claim status under Bankruptcy Code §§ 364(c)(1) and 507(b), (ii) adjudicate adequate protection pursuant to the Existing Credit Agreement to have superpriority claim status under Bankruptcy Code §§ 364(c)(1) and 507(b), and (iii) adjudicate DIP Lender to be secured as stated above under Bankruptcy Code §§ 364(c) and (d), with first priority priming liens on all of the Collateral.

Without limiting the foregoing in any way, the Financing Order would include, among other things, the following provisions: (i) DIP Lender would have full stay relief so that DIP Lender can enforce its rights in the event of a default without having to obtain any other or further court order, including, without limitation, the enforcement, on three days prior written notice, of such remedies against the Collateral, (ii) the Estates would not obtain any other loan without the prior written consent of DIP Lender, (iii) the Estates would not seek approval for or incur any debt which would prime the liens granted to DIP Lender, or would be *pari passu* with the liens granted to DIP Lender,

(iv) the Estates would agree and the Financing Order will so provide that there would be no Bankruptcy Code § 506(c) surcharge claims against DIP Lender or its Collateral, (v) that the Loan is an arms-length transaction, in good faith, for reasonable consideration, and is not a fraudulent transfer under the Bankruptcy Code or applicable law.

15. The provisions of Bankruptcy Rule 4001(c)(1)(B)(ii)–(xi) do not apply to this financing arrangement.

## **Negotiation of the DIP Facility**

16. The Debtors negotiated the terms of the DIP Facility and the Interim Order with the DIP Lender in good faith and at arms' length. The Debtors have determined that their existing financial circumstances necessitate the DIP Facility in order to meet their short-term operating expenses. According, the DIP Facility and the Interim Order are most favorable in light of the Debtors' working capital needs pending the Transaction.

17. The DIP Facility constitutes a financing package in the best interests of the Debtors and their estates. The DIP Lender presented the Debtors with the most attractive economic package available under the circumstances.

## **Legal Standard**

18. Pursuant to 11 U.S.C. § 364(d), the Court may authorize the incurring of credit secured by a senior lien "if the Trustee is unable to obtain such credit otherwise, and there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." By this motion, the Debtors seek authorization of the DIP Facility, up to an aggregate principal amount of $2,075,000.00 to be secured by a first and prior lien upon the Collateral. The funds are required for continuation of the Debtors' operations until a closing of the Transaction. Without operations there is no revenue, and the value of the overall enterprise and the property interests of all secured creditors, is adversely affected.

19. Only reasonable efforts need be taken to locate unsecured post-petition financing. "[Section 364] imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co., Inc*. 789 F.2d 1085, 1088 (4th Cir. 1986).

20. The possibility of financing from any other source is, essentially, impossible, given the Debtors' existing debt and the urgency of their situation. Only lenders with existing liens against the Collateral, such as the DIP Lender, are motivated to advance additional funds to protect their collateral.

21. The expenditures under the DIP Facility are made in preservation of the interests of all other creditors and parties-in-interest, who desire to maintain and support the commercial viability of the Debtors. Among other things, the DIP Facility will enable the continued operation of the Debtors' businesses, thereby preserving the value of any such secured creditor's interest in Collateral. As a result, such funding may itself constitute a form of adequate protection. *See In re 499 W. Warren Street Associates*, 142 B.R. at 53, 56-57 (Bankr. N.D.N.Y. 1992).

## **Necessity for Immediate Relief**

22. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant … (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." The anticipated operating cash flow shortages would result in an immediate disruption to the Debtors' operations and cause irreparable harm to the Debtors' estates. If the DIP Facility is not approved, the Debtors' going concern value is severely threatened.

23. The Debtors submit, therefore, that that delay in granting the relief requested in this Motion would result in severe, immediate and irreparable harm to the Debtors. Pursuant to Bankruptcy Rule 4001(c)(2) and otherwise, the Debtors are initially seeking an interim order granting the relief requested by this Motion to be followed by, and subject to, a final order. As other courts have recognized, granting interim relief is not inconsistent with Bankruptcy Rule 6003. *See, e.g.*, *In re First NLC Fin. Serv., LLC,* Case NO. 08-10632, 2008 Bankr. LEXIS 1466 at 6–7 (Bankr.S.D. Fla. Jan. 28, 2008. Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003.

## IV. CONCLUSION.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached to this Motion as Exhibit A, granting: (a) the relief requested in this Motion; and (b) such further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 15th day of September, 2017.

MICHAEL W. CARMEL, LTD.

By: /s/ Michael W. Carmel
     Michael W. Carmel

COPY of the foregoing sent
this 15th day of September, 2017 to:

Elizabeth C. Amorosi, Esq.
Larry Watson, Esq.
Office of the U.S. Trustee
230 N. First Avenue
Phoenix, AZ  85003

Thomas J. Salerno
Christopher C. Simpson
Stinson Leonard Street, LLP
1850 N. Central Ave., Ste. 2100
Phoenix, AZ  85004-4584
Thomas.salerno@stinson.com
Christopher.simpson@stinson.com
*Attorneys for DW Jade, LLC*

By *Sharon D. Kirby*