# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| PARAMOUNT BUILDING SOLUTIONS, LLC | Case No. 2:17-bk-10867-EPB |
| | Case No. 2:17-bk-10868-EPB |
| CLEANING SOLUTIONS, LLC | Case No. 2:17-bk-10869-EPB |
| JMS BUILDING SOLUTIONS, LLC | Case No. 2:17-bk-10870-EPB |
| STARLIGHT BUILDING SOLUTIONS, LLC, | |
| | (Jointly Administered) |
| Debtors. | **ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (III) AUTHORIZING THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF** |

This matter comes before the Court pursuant to the *Debtors' Motion For Entry Of Orders: (A)(I) Approving Bid Procedures Relating To Sale Of The Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling A Hearing To Consider The Sale; (IV) Approving The Form And Manner Of Notice Of Sale By Auction; And (V) Granting Related Relief; And (B)(I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Assets Of Debtors Outside The Ordinary Course Of Business; (II) Authorizing The Sale Of Assets Free*

*And Clear Of All Liens, Claims, Encumbrances And Interests; (III) Authorizing The Assumption, Sale And Assignment Of Certain Executory Contracts And Unexpired Leases; And (II) Granting Related Relief* (the "**Sale Motion**")[1] filed by Paramount Building Solutions, LLC, Cleaning Solutions, LLC, JMS Building Solutions, LLC, and Starlight Building Solutions, LLC (collectively, the "**Debtors**"). Pursuant to the Sale Motion, the Debtors seek an order, under Bankruptcy Code §§ 105(a), 363, 365 and Bankruptcy Rules 2002, 6004, and 6006, authorizing and approving the proposed sale of the Purchased Assets pursuant to the Asset Purchase Agreement between DW Jade, LLC, on behalf of its designate Jade Opco, LLC and the Debtors (the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit A**. As designated by DW Jade, LLC pursuant to the Purchase Agreement, Jade Opco, LLC is the designated "**Purchaser Designee**" under the Purchase Agreement and "**Buyer**" under this Order.

On November 15, 2017, the California Service Employees Health and Welfare Trust Fund filed an objection to the Sale Motion [Dkt. No. 122] (the "**Trust Fund Objection**"), arguing, among other things, that the assets of the Debtors could not be sold pursuant to Bankruptcy Code § 363(f), free and clear of successor liability claims for pre-petition obligations, including, obligations for pension liability on account of an under-funded multiple employer pension plan, delinquent ERISA contributions and withdrawal liability arising under a collective bargaining agreement which expired on September 5, 2017 (the "**Collective Bargaining Agreement**"). [Trust Fund Objection, Dkt. No. 122, pages 6, 12-14, 17-19 of 21]. No other objections to the Sale Motion were filed.

Shortly before November 17, 2017, the Debtors became aware that US Metro Group, Inc., ("**US Metro**") had short paid a receivable by approximately $230,000 (the "**US Metro Receivable**"). US Metro withheld the receivable pursuant to a claimed right of "offset". The Debtors, the Committee and the DIP Lender each contend that US Metro's actions in withholding payment were improper.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement attached hereto as Exhibit A and previously attached to Sale Motion as Exhibit D thereto [Dkt. No. 12-2 Exhibit D-E].

The Court having considered the Motion and the Purchase Agreement, objections thereto, the declarations filed in this case, the statements of counsel and any testimony or offer of proof as to testimony on the record at the hearing on November 17, 2017 and at the continued hearing on November 21, 2017 (the "**Sale Hearing**"), including the offer of proof as to testimony from Debtors' counsel specifically addressing § 363(m), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion and based upon the entire record before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their bankruptcy estates, their creditors, and other parties-in-interest; and sufficient cause appearing therefor;

THE COURT HEREBY FINDS AS FOLLOWS:

A. **Jurisdiction and Venue**. This Court has jurisdiction to consider the Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Bankruptcy Code §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

C. **Notice**. As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing and the transactions set forth in the Purchase Agreement (the "**Transaction**"), has been provided in accordance with Bankruptcy Code §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances; and (iv) no other or further notice of the Sale Motion, the Auction, the Sale Hearing or the Transaction, is or shall be required.

D. **Sale in the Best Interests**. Good and sufficient reasons exist for approval of the Purchase Agreement, and the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

E. **Business Justification**. Debtors have demonstrated good, sufficient and sound business purposes and compelling reasons for the Transaction other than in the ordinary course of business under Bankruptcy Code § 363(b), including that, among other things, the consummation of the Transaction with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates. Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition to the Buyer consummating the transactions set forth in the Purchase Agreement.

F. **Arm's-Length Sale**. The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from arm's-length bargaining positions. The Buyer is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code § 101(31). Neither the Debtors, nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code § 363(n). Specifically, the Buyer has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

G. **Good-Faith Buyer**. Based upon the entire record before this Court, the Buyer is a good-faith purchaser of the Purchased Assets within the meaning of Bankruptcy Code § 363(m) and, is therefore entitled to all of the protections afforded thereby. The Buyer has proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) Buyer complied with the provisions in the Bidding Procedures Order dated November 14, 2017 [Dkt. No. 120] (the "**Bidding Procedures Order**"; (c) Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; and (d) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Transaction have been disclosed.

H. **Highest and Best Offer.** The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order. The Auction established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the

Purchased Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher and better offer for the Purchased Assets. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

I. **Consideration.** The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Buyer, has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors' estates. Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates and all other parties in interest.

J. **Free and Clear**. The Debtors are the sole and lawful owner of the Purchased Assets, or have a valid, enforceable property interest in such assets. The transfer of the Purchased Assets to the Buyer under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens (as defined in Bankruptcy Code § 101(37) ("**Liens**"), claims (as defined in Bankruptcy Code § 101(5) ("**Claims**"), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever (collectively including Liens and Claims, the "**Interests**") other than the Assumed Liabilities, including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights and (ii) those relating to taxes arising under or out

of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date. For avoidance of doubt, all Interests other than the Assumed Liabilities shall attach to the cash proceeds received by the Debtors ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

K. The Debtors may sell the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Each entity with an Interest in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Order, consented to the Transaction or is deemed to have consented to the Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of Bankruptcy Code § 363(f). Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented pursuant to Bankruptcy Code § 363(f)(2). All holders of Interests are adequately protected by having their Interests attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

L. **No Fraudulent Transfer**. The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

M. **Not a Successor**. Buyer (a) is not a successor to the Debtors, (b) has not, de facto or otherwise, merged with or into the Debtors, (c) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (d) does not have a common

identity of incorporators, directors or equity holders with the Debtors, and (e) is not holding itself out to the public as a continuation of the Debtors. The (i) transfer of the Purchased Assets to Buyer and (ii) assumption and assignment to Buyer of the Assigned Contracts, do not and will not subject Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability and, except as otherwise contained herein, in connection with any carve-out provided for in financing or cash collateral orders, or in the Purchase Agreement, Buyer shall not have any liability to any broker or other professionals retained by the Debtors or to cure any default of the Debtors related to the Purchased Assets or Assigned Contracts. In considering the Trust Fund Objection, the Court finds the well-reasoned opinion of Judge Walrath, as set forth *In re Ormet Corp.*, persuasive. *In re Ormet Corp.*, No. 13-10334, 2014 WL 3542133 (Bankr. D. Del. July 17, 2014). The Court concludes that § 363(f) of the Bankruptcy Code permits the sale of the Debtors' assets free and clear of any successor liability claim for **pre-closing** obligations arising under the Collective Bargaining Agreement, including any pension or trust agreement obligation arising therefrom.

N. **Cure/Adequate Assurance**. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Buyer has (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Assigned Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The

Buyer's promise to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

THEREFORE, IT IS ORDERED THAT:

1. **Motion is Granted**. The Motion and the relief requested therein is granted and approved, as set forth herein.

2. **Objections Overruled**. The Trust Fund Objection is overruled on the merits with prejudice. Any further objections to the entry of this Order or the relief granted herein and requested in the Sale Motion including, that have not been withdrawn, waived, or settled, or not otherwise resolved, if any, hereby are denied and overruled on the merits with prejudice. The Purchased Assets shall transfer to the Buyer pursuant to § 363(f) of the Bankruptcy Code free and clear of any **pre-closing** successor liability claim arising under the Collective Bargaining Agreement, including, without limitation any **pre-closing** obligations pursuant to any multiple employer pension plan or Benefit Plan arising therefrom.

3. **Approval**. The Purchase Agreement is hereby approved. The Debtors are hereby authorized to (a) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, (b) consummate the Transaction in accordance with the terms and conditions of the Purchase Agreement; and (c) take all other and further actions as may be reasonably necessary to implement the transactions contemplated in the Purchase Agreement.

4. **Free and Clear**. Except as otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to Bankruptcy Code §§ 105(a) and 363(f), the Debtors are authorized to transfer the Purchased Assets to the Buyer and, as of the Closing Date, the Buyer shall take title to and possession of the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including but not limited to the Liens, Claims and Excluded Liabilities, with all such Interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of

priority, which such Interests now have against the Purchased Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The Purchased Assets shall transfer to the Buyer pursuant to § 363(f) of the Bankruptcy Code free and clear of any **pre-closing** successor liability claim arising under the Collective Bargaining Agreement, any multiple employer pension plan or Benefit Plan.

5. **Carve Out for Certain Professionals**. The debtor-in-possession lender, DW Jade, LLC (the "**DIP Lender**") shall carve-out from its Collateral and fund $325,000 on the Closing Date for the sole and exclusive payment of the combined fees and expenses of Committee counsel, Debtors counsel, and the US Trustee. To the extent any of the $325,000 carve-out remains after satisfaction in full of the fees and expenses of Committee counsel, Debtors counsel, and the US Trustee, the remaining funds shall be used to satisfy allowed general unsecured claims. For the avoidance of all doubt, aside from the $325,000 set forth above, the DIP Lender shall not be required to carve out or pay over any additional amounts under this paragraph 5.

6. **Carve Out for General Unsecured Claims**. In the event there is a cash shortfall on the Closing Date resulting from nonpayment of the US Metro Receivable that would otherwise prevent the Closing, then: (i) the DIP Lender shall carve-out from its Collateral and pay $100,000 on the Closing Date for the sole and exclusive benefit of the holders of allowed general unsecured claims; and (ii) any right to recover from the US Metro Receivable shall remain with the estates and any recovery on the US Metro Receivable shall be split 50% to the Debtors (for the sole and exclusive benefit of the holders of allowed general unsecured claims) and 50% to the Buyer until the Debtors have recovered $100,000 from the US Metro Receivable (which such funds held by Debtors shall be held for the sole and exclusive benefit of the holders of allowed general unsecured claims) and thereafter any additional recovery above such amounts shall be paid over to the Buyer.

In the event there is <u>not</u> a cash shortfall on the Closing Date resulting from nonpayment of the US Metro Receivable that would otherwise prevent the Closing, then the DIP Lender

shall carve-out from its Collateral and pay $200,000 for the sole and exclusive benefit of the holders of allowed general unsecured claims. For the avoidance of doubt, the DIP Lender's deficiency claim, if any, shall not be entitled to any distribution from the carve-outs under the paragraph 6.

For the avoidance of all doubt, aside from the $200,000 set forth above, the DIP Lender shall not be required to carve out or pay over any additional amounts under this paragraph 6.

7. **Transfer of Estate Kucera Claims and Potential Recovery for General Unsecured Creditors from Kucera Actions.** The Debtors assert that they have certain claims against Glen Kucera, the former Chief Executive Officer of the Debtors, including, without limitation:

    a. claims which have been or may be asserted pursuant to the action pending in the United States District Court for the District of Arizona, Case No. 2:17-cv-02265-DGC;

    b. all actions against Glen Kucera by any Debtor for failure to pay over trust fund taxes;

    c. actions against Glen Kucera based on his negligent or gross negligent or reckless breach of any duty to any Debtor;

    d. all possible actions by any Debtor against Glen Kucera related to his receipt of shares in a minority owned business, including, without limitation, TrooperUSA or any other contractor of American Airlines or other customer of the Debtors or any other personal or pecuniary benefit received from or through a customer of the Debtors; and

    e. any other causes of action, claims and rights against Glen Kucera by any Debtor or the estate of any Debtor (all such claims held by the Debtors or the estates, including, without limitation, a, b, c, d and e herein are defined as the "Estates Kucera Claims").

DW Jade, LLC asserts that it holds separate claims against Glen Kucera (the "DW Jade Kucera Claims"). Together the DW Jade Kucera Claims and the Estates Kucera Claims are referred to herein as the "Combined Kucera Claims".

Upon Closing Debtors shall transfer to the Buyer or its designee all of the Estate Kucera Claims including all rights related thereto, free and clear of all Liens, Claims and Interests. Upon Closing, Buyer or its designee shall have sole legal title, standing, and all rights and powers to prosecute, defend, and settle in any amount, each of the Combined Kucera Claims in Buyer's or its designee's sole and absolute discretion. Buyer shall remit thirty-percent (30%) of any net cash recovery (including, but not limited to, net of any professional fees and expenses and any setoffs) from the Combined Kucera Claims for the sole and exclusive benefit of the holders of allowed general unsecured claims. Notwithstanding anything set forth herein, the Estate Kucera Claims will be assigned in a way that maintains the coverage under the applicable insurance policy or policies covering such claims, but the proceeds of any recovery will be distributed in accordance with the allocation procedure set forth in this order. All other claims against the Debtors' directors and officers shall remain with the estates and inure to the benefit of the general unsecured creditors.

Notwithstanding any language in the Sale Motion, any prior proposed draft of this Order, the Purchase Agreement, or any related pleadings (including this Order) to the contrary, following a sale and transfer or assignment of the Estate Kucera Claims, including, without limitation, the counterclaim filed by Paramount in Case No. 2:17-cv-02265-DGC before the United States District Court for the District of Arizona to the Buyer or its designee, each of the Combined Kucera Claims shall remain subject to any defenses Kucera currently may have to those claims, including the right to setoff, recoupment, and any other defenses of any type or nature that Kucera has or may have to such claims.

8. **Segregation of Advantage Receivables.** Pursuant to a Participation Agreement dated July 18, 2016, Huntington National Bank, as the successor-in-interest to FirstMerit Bank B.A., received a participation in the senior secured loans to the Debtors held by Buyer. Pursuant to its participation, Huntington received rights to proceeds of identified accounts receivable (the

"**Advantage Receivables**"). Prior to the Closing Date of the Sale, the Debtor shall continue to segregate their collection of the Advantage Receivables into a separate cash account. Prior to Closing, any collected Advantage Receivables shall be paid over to Huntington Bank on a monthly basis and applied to principal. Upon Closing, all remaining Advantage Receivables collected and not yet remitted to Huntington shall be turned over to Huntington.

9. **Segregation of Texas Sales Tax**. Prior to the Closing Date, the Debtor shall continue to segregate any and all post-petition Texas sales tax into a separate cash account. Upon Closing, all remaining collected Texas Sales Tax not yet remitted shall be turned over to the appropriate Texas taxing authority.

10. **Pennsylvania and Texas Sale Tax**. Any amounts that are agreed to be due or finally adjudicated to be due (a "**Determination**"), for Pennsylvania or Texas sale tax shall be assumed and either (i) paid by the Buyer at such time of the Determination or (ii) otherwise paid by Buyer pursuant to the terms of a negotiated agreement between the Buyer and the aforementioned parties.

11. **Valid Transfer**. As of the Closing Date, (a) the transactions contemplated by the Purchase Agreement effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Buyer, and shall vest Buyer with title to such assets free and clear of all Liens, Claims, Interests and Excluded Liabilities and (b) the Purchase Agreement and the transactions and instruments contemplated hereby shall be enforceable against and binding upon Buyer and Seller, and not subject to rejection or avoidance by the Debtors or any chapter 11 or chapter 7 trustee of the Debtors and their estates.

12. **General Assignment**. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to Buyer of the Debtors' interests in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

13.     **Release of Interests**. Subject to Paragraphs 4 (Free and Clear) and 28 (Sale Proceeds) of this Order, this Order shall be effective as a determination that, on the Closing Date, all Interests other than the Assumed Liabilities of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.

14.     **Direction to Release Interests**. On the Closing Date and subject to the Interests attaching to the cash proceeds of the Sale as provided for in Paragraphs 4 (Free and Clear) and 28 (Sale Proceeds) of this Order, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

15.     **No Successor Liability**. Neither Buyer nor its affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Assumed Liabilities, the transfer of the Purchased Assets to Buyer under the Purchase Agreement shall not result in (i) Buyer, its affiliates, members, or shareholders, or the Purchased Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) Buyer, its affiliates, members, or shareholders, or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Lien, Claim, Interest or Excluded Liability, or (iii) Buyer, its affiliates, members, or shareholders, or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement. The Purchased Assets shall transfer to the Buyer pursuant to § 363(f) of the Bankruptcy Code free and clear of any **pre-closing** successor liability claim arising under the Collective Bargaining Agreement, any multiple employer pension plan or Benefit Plan.

16. **Assumption and Assignment of Assigned Contracts**. Under 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Transaction, the Debtors' assumption and assignment of the Assigned Contracts to the Buyer free and clear of all Interests pursuant to the terms set forth in the Purchase Agreement, as modified by the terms of any amendments reached with the respective counterparty, is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2) with respect thereto are hereby deemed satisfied. Following reasonable notice and an opportunity for a hearing, each counterparty to an Assigned Contract hereby is forever barred, and estopped from raising or asserting against the Debtors, or Buyer, or the property of either, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, are either deemed satisfied or constitute unenforceable anti-assignment provisions that are void and of no force and effect.

17. Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365 (i) the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts; and (ii) the Debtors shall be relieved from any liability for any breach of such Assigned Contracts occurring thereafter pursuant to Bankruptcy Code §365(k).

18. To the extent any governmental license or permit is necessary for the operation of the business is determined not to be an executory contract assumable and assignable under Bankruptcy Code § 365, Buyer shall apply for and obtain any necessary license or permit promptly after the Closing and to the extent permitted by law such licenses or permits of the Debtors shall remain in place for the Buyer's benefit until new licenses and permits are obtained. Debtors shall have no liability under such licenses or permits after Closing.

19. Notwithstanding anything herein to the contrary and subject to the Purchase Agreement, Buyer may remove any Contract from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) by providing written notice to the Debtors and the counter-parties to such contract(s) at least three (3) business days prior to the Closing.

20. **Continued Access**: After the Sale Closing Date, for the purpose of facilitating the orderly liquidation of the estates, Buyer shall provide the estate fiduciaries with reasonable access to (i) Debtors' management team that continues to be employed by Buyer and (ii) Debtors' books and records.

21. **Binding Effect of Order**. This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

22. **Binding on Successors**. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon the Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in, the Debtors, Buyer and their respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting Interests in the Purchased Assets and all non-Debtor counterparties to the Assigned Contracts, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and their respective successors and assigns.

23. **Bankruptcy Code §363(n)**. The consideration provided by Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code § 363(n).

24. **Good Faith**. The transactions contemplated by the Purchase Agreement are undertaken by Buyer without collusion and in good faith, as that term is used in Bankruptcy Code § 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction (including the assumption and assignment of the Assigned Contracts) with Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code § 363(m).

25. **Fair Consideration**. The consideration provided by the Buyer to the Debtors pursuant to the Purchase Agreement for its purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Fraudulent Conveyance Act.

26. **Surrender of Possession**. The Debtors shall exercise commercially reasonable efforts to assure that all entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets either to (i) the Debtors before the Closing Date, or (ii) to Buyer on the Closing Date.

27. **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith. This Court further retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to resolve any dispute regarding any account receivable purchased under the Purchase Agreement, including specifically, without limitation, the US Metro Receivable or any other receivable with or involving US Metro.

28. **Sale Proceeds.** Any and all valid and perfected Interests in Purchased Assets of the Debtors shall attach to any cash proceeds of such assets immediately upon receipt of such proceeds by the Debtors (or any party acting on the Debtors' behalf) in the order of priority, and with the same validity, force and effect which they now have against such assets, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto, and, in addition to any limitations on the use of such cash proceeds pursuant to any provision of this Order.

29. **Non-material Modifications**. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

30. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order.

31. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

32. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), this Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof. Time is of the essence in closing the transactions referenced herein, and the Debtors and Buyer intend to close

the Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

33. **Choice of Law**. Notwithstanding anything to the contrary in the Purchase Agreement, the Purchase Agreement shall be governed by and construed in accordance with Federal Bankruptcy Law, to the extend applicable, and where state law is implicated, the laws of the State of Arizona shall govern. The fees of professionals engaged by DIP Lender shall be subject to applicable reasonableness standards under Arizona law.

`

**DATED AND SIGNED ABOVE.**